## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JOEL LOPEZ**, *individually
and on behalf of all others
similarly situated*,

      Plaintiff,

v.                                                                Case No. 8:24-cv-150-WFJ-AAS

**CONSUMER SAFETY
TECHNOLOGY, LLC**,
 d/b/a **INTOXALOCK**,

      Defendant.

_____/

## ORDER

Before the Court are Defendant Consumer Safety Technology, LLC d/b/a Intoxalock's ("Intoxalock") Motion to Dismiss Count I (Dkt. 26) of Plaintiff Joel Lopez's Amended Class Action Complaint (Dkt. 21) and Motion to Strike Class Allegations (Dkt. 28). Mr. Lopez filed Responses to both motions (Dkts. 29, 30), and Intoxalock filed Replies (Dkts. 36, 37). Upon careful consideration, the Court denies the motions.

## BACKGROUND

Intoxalock is an ignition interlock device company that markets its breathalyzer products through telephone solicitations of individual consumers. Dkt. 21 ¶¶ 6, 13. Mr. Lopez is one such consumer. *Id.* ¶ 17. In his Complaint, Mr.

Lopez alleges that Intoxalock has called his personal residential cellphone number sixty-six times since September 2023. *Id.* These telephone solicitations were "aggressive," "misleading," and unwelcome: Mr. Lopez never gave Intoxalock his contact information or consent to be called. *Id.* ¶¶ 14, 18, 41–42. Mr. Lopez asked Intoxalock to stop calling him and place him on its internal do not call list, but Intoxalock kept calling. *Id.* ¶ 19. Mr. Lopez did not give up. He states that he repeatedly requested Intoxalock stop calling him, that he made these requests via telephone and email, and that he asked at least five times to be placed on Intoxalock's do not call list. *Id.* ¶¶ 20–21. Intoxalock allegedly kept calling. *Id.* ¶ 22. Mr. Lopez next placed himself on the national Do Not Call Registry ("DNC Registry"). *Id.* ¶ 31. Intoxalock kept calling anyway. *Id.* ¶ 32.

When Mr. Lopez spoke to Intoxalock representatives on the phone, they agreed to stop calling him. *Id.* ¶ 22. And yet, the Amended Complaint states, "the barrage of calls continued." *Id.* Mr. Lopez reports that one Intoxalock agent told him she would "flag" his account but could not guarantee that the calls would stop. *Id.* ¶¶ 24–25. Another Intoxalock agent told Mr. Lopez that, although she could see he had requested not to be called, "his telephone number was not removed from the lead list of numbers to be dialed." *Id.* ¶ 33.

Mr. Lopez alleges that Intoxalock made these persistent calls through use of an "automated system [that] selects and dials numbers from a lead list of numbers

2

to be dialed without regard to whether those numbers have been placed on [Intoxalock's] internal DNC list or national DNC list." *Id.* ¶ 34. He reasons that, if Intoxalock employees dialed numbers manually, "human intervention would have prevented the calls from being placed to a number that had been 'flagged' as do not call." *Id.* The Amended Complaint provides these specific details about Intoxalock's alleged automated system:

> Upon information and belief, the selection and dialing of numbers for the calls at issue are done using an automated system because the calls were sent from telephone numbers used to message consumers en masse; because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making calls without manually dialing the recipients numbers; and because the hardware and software used by Defendant to send such calls have the capacity to both select numbers to be dialed and to dial such numbers in an automated fashion based on predetermined, programmed, or random criteria or settings.

*Id.* ¶ 46. In his Response to the instant Motion, Mr. Lopez specifically avers that Intoxalock uses the Genesys system, configured as an auto dialer, to place calls. Dkt. 29-1 at 2–3.

Mr. Lopez filed the instant Amended Complaint in March 2024. He alleges violations of the Florida Telephone Solicitation Act ("FTSA") and federal Telephone Consumer Protection Act ("TCPA"), on behalf of himself and multiple classes of plaintiffs: (1) the "FTSA No Consent Class"; (2) the "FTSA Internal Do Not Call ("DNC") Class"; (3) the "Do Not Call Registry Class"; and (4) the

"Internal DNC Class." The Amended Complaint defines the FTSA No Consent Class as:

> All persons in the State of Florida who, within the four years prior to the filing of this Complaint (i) were sent a telephonic sales call within the four years prior to the filing of the Complaint through the date of class certification, (ii) using the same equipment or type of equipment utilized to call Plaintiff (iii) from or on behalf of Defendant and/or its agents, (iv) promoting Defendant's products or services, (v) without the recipients' prior express written consent.

Dkt. 21 at 11. The "Do Not Call Registry Class" consists of:

> All people in the United States who from four years prior to the filing of this action through the date of class certification, (i) were called by or on behalf of Defendant; (ii) more than one time within any 12-month period; (iii) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty-one days; (iv) for the purpose of promoting or selling Defendant's products and/or services.

*Id.* at 12.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Intoxalock moved to dismiss Count I, which brings a claim for violation of the FTSA on behalf of Mr. Lopez and the FTSA No Consent Class. *Id.* ¶¶ 69–80. Intoxalock also moved under Rule 12(f) and Rule 23 to strike the FTSA No Consent Class and the Do Not Call Registry Class. Dkt. 28 at 6–14.

**Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering the motion, the Court must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). The Court should limit its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

A party moving to strike class allegations under Rule 12(f) must demonstrate that "the plaintiff's class action allegations are redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f); *Café, Gelato & Panini LLC v. Simon Prop. Grp., Inc.*, 20-60981-CIV-CANNON/Hunt, 2022 WL 17987098, at *3 (S.D. Fla. Mar. 22, 2022) (quotation omitted). As under Rule 12(b)(6), "[w]hen deciding a motion to strike, a court must accept the truthfulness of well-pleaded facts and cannot consider matters beyond the pleadings." *Pavic v. Laser Spine Inst., LLC*, 8:13–cv–02578–EAK–EAJ, 2014 WL 2707953, at *2 (M.D. Fla. June 13, 2014) (quotations omitted); 5C Wright & Miller Fed. Prac. & Proc. § 1380 (Feb. 2024).

Motions to strike are generally disfavored and "will usually be denied." *Italiano v. Jones Chemicals, Inc.*, 908 F. Supp. 904, 907 (M.D. Fla. 1995) (collecting cases).

## Analysis

### I. Motion to Dismiss

Intoxalock argues Count I fails to state that Intoxalock used an automated dialing system in violation of the FTSA. Dkt. 26 at 4–6. Mr. Lopez responds that the facts in the Amended Complaint permit the reasonable inference that such a system was used. Dkt. 29 at 5. He further argues that his pleading is owed some latitude because the specific details of Intoxalock's dialing system are within its particular knowledge. *Id.* at 6.

The FTSA, Fla. Stat. § 501.059 (8)(a), provides that:

A person may not make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers . . . without the prior express written consent of the called party.

"To properly allege a violation of this provision, a plaintiff must allege some facts making it plausible that the defendant used an automated dialing system as described by the statute." *Davis v. Coast Dental Servs., LLC*, 8:22-cv-941-KKM-TGW, 2022 WL 4217141, at *2 (M.D. Fla. Sept. 13, 2022). However, no particular set of facts is required to plead use of an automatic system; as always, a complaint need only state enough to raise a right to relief above the speculative level. *Compare id.* (plaintiff could have stated a claim by alleging "information on [the

6

defendant's] website indicating that messages are sent through automated systems, information regarding the formality of the message, or information regarding the phone number from which the message was received that could indicate an automated source"), *with Taylor v. Suntuity Solar LLC*, 8:23-cv-00694-MSS-AEP, 2024 WL 964199, at *5 (M.D. Fla. Mar. 6, 2024) (plaintiff stated a claim by naming a specific autodialer system and alleging a pause after she answered and before a live call center employee picked up), *and Simpson v. J.G. Wentworth Co.*, 8:23-cv-00152-KKM-AEP, 2024 WL 245992, at *5 (M.D. Fla. Jan. 23, 2024) (an FTSA claim that alleged a pause after the plaintiff answered, a recording that was not responsive to the plaintiff's voice, and a "generic monotone voice" adequately pled a pre-recorded call in violation of the FTSA).

In *Davis*, a case heavily relied upon by Intoxalock, the plaintiff alleged that the defendant sent her a single text message using "a computer software system that automatically selected and dialed her telephone number to advertise dental services." *Davis,* 2022 WL 4217141 at *1. The *Davis* court found this allegation conclusory. *Id.* at *2. In contrast, Mr. Lopez has pled far more. The Amended Complaint states that Intoxalock called Mr. Lopez sixty-six times from "telephone numbers used to message consumers en masse." Dkt. 21 ¶¶ 17, 46. It also specifically describes Intoxalock's automated dialing system. *Id.* ¶ 46. Further supporting the inference that Intoxalock used an automated dialing system, the

Amended Complaint alleges that Intoxalock used a "lead list" of telephone numbers and that Intoxalock agents exerted no control over whether numbers on an internal do not call list would be called anyway. *Id.* ¶¶ 24–25, 33.

Even without alleging the specific system used by Intoxalock,[1] the Amended Complaint pleads enough facts to "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. 544, 570 (2007). Intoxalock's Motion to Dismiss Count I of the Amended Complaint is denied.

## II. Motion to Strike

Intoxalock also moves to strike the FTSA No Consent Class and the Do Not Call Registry Class under Rules 12(f) and 23. When a defendant moves to strike class allegations under Rule 12(f), many courts "view the Rule 23 factors through the lens of the Rule 12(f) standard." *Café, Gelato & Panini*, 2022 WL 17987098, at *3. Governed by Rule 23, class certification proceeds in two parts. First, the putative class representative must demonstrate that the Rule 23(a) factors of numerosity, commonality, typicality, and adequacy are satisfied. Fed. R. Civ. P. 23(a). To permit an evaluation of these factors, the proposed class must be "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Next, the representative must also "demonstrate

---

[1] While Mr. Lopez named the specific system in his Response, Dkt. 29-1 at 2–3, the Court will not consider facts outside "the four corners of the complaint," *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).

entitlement to class relief under one of the three provisions in Rule 23(b)." *Nuwer v. FCA US LLC*, 343 F.R.D. 638, 646 (S.D. Fla. 2023).

It is rarely proper for a court to strike class allegations based only on the face of the complaint. *See Herrera v. JFK Med. Cntr.*, 648 F. App'x 930, 934 (11th Cir. 2016) (unpublished). Because "class certification is an evidentiary issue," the propriety of certifying a class "usually should be predicated on more information than the complaint itself affords." *Id.* A defendant seeking to strike a class prior to discovery has "the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (quotation omitted). Intoxalock has not met this burden.

A. <u>FTSA No Consent Class</u>

Intoxalock urges the Court to strike the FTSA No Consent Class because it is defined based upon the merits of Mr. Lopez's claim. Dkt. 28 at 6–8. Specifically, Intoxalock argues that "[b]ecause membership in the class is determined by whether the consumer received a telephonic sales call, Intoxalock would be unfairly prejudiced by a proceeding where a crucial merits inquiry has already been determined in the class members' favor—individuals are either already determined to have won on this critical issue, or they are not members of the class

at all." Dkt. 28 at 7–8 (citing *Chavez, v. Air Prods. & Chems. Inc.*, CV 14-06360-BRO, 2016 WL 9558905, at *9 (C.D. Cal. Feb. 24, 2016)).

Despite Intoxalock's protestations to the contrary, Dkt. 38 at 5, it is pressing a "fail-safe class" argument. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (defining a fail-safe class as one in which "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment"). A fail-safe class is problematic because it "precludes membership unless the liability of the defendant is established." *Alhassid v. Bank of Am.*, 307 F.R.D. 684, 693 (S.D. Fla. 2015). By "only includ[ing] those who are first determined to be entitled to relief," *MSP Recovery Claims v. Ace Am. Ins. Co.*, 341 F.R.D. 636, 646 (S.D. Fla. 2022), a fail-safe class "front-ends a merits determination on [the defendant's] liability," *Alhassid*, 307 F.R.D. at 694.

The FTSA, Fla. Stat. § 501.059 (8)(a), provides that:

> A person may not make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers . . . without the prior express written consent of the called party.

It follows, then, that simply placing a telephonic sales call to members of the proposed class is not enough to make Intoxalock liable. To be entitled to relief, Mr. Lopez and the other class members must show that the equipment Intoxalock used to place the call violates the FTSA. As a result, the class's "telephonic sales call" requirement does not presuppose Intoxalock's liability or otherwise front-end a

merits determination. Because Intoxalock has not shown it will be impossible to certify the FTSA No Consent Class, its motion to strike this class is denied.

B. Do Not Call Registry Class

Intoxalock argues that the DNC Registry Class should be stricken because it is overly broad and therefore lacks commonality. Intoxalock asserts that the DNC Registry Class is "overly broad because it includes all numbers on the National DNC Registry, regardless of who registered that number" and "because it entirely fails to exclude or carve out individuals who had an 'established business relationship' with Intoxalock." Dkt. 28 at 10–11. It asserts that individualized issues will predominate because of these deficiencies and because of the fact that the class "includes all cellular numbers rather than just residential ones." *Id.* at 13. Each of these alleged deficiencies goes to the class members' entitlement to relief under the TCPA. *See* 47 C.F.R. § 64.1200(a)(4)(i), § 64.1200(c).

These arguments do not justify the disfavored action of striking class allegations based only on the Amended Complaint. A court need not require a named plaintiff to demonstrate that every member of a proposed class is entitled to relief before certifying the class—much less before allowing a class allegation to survive a motion to strike. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019); *Sharfman v. Premier Med., Inc.*, 6:20-cv-1278-WWB-LRH, 2021 WL 6884683, at *6 (M.D. Fla. Dec. 29, 2021). In *Cordoba*, the defendant argued

that a class was improperly certified because "the bulk of the unnamed members" arguably lacked standing. 942 F.3d at 1276. As here, this purported lack of entitlement to relief impacted both overbreadth and predominance. *Id.* at 1275. The Eleventh Circuit noted that:

> A plaintiff need not prove that every member of the proposed class has Article III standing prior to certification, and in some cases a court might reasonably certify a class that includes some putative members who might not have [standing under applicable precedent] and decide to deal with the problem later on in the proceeding, but before it awarded any relief.

*Id.* at 1277. The problem in *Cordoba* was that "many . . . even a majority" of unnamed plaintiffs potentially lacked an injury. *Id.* The district court abused its discretion by certifying the class without first considering "whether the individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing." *Id.*

Critically, the Eleventh Circuit commented that "if [the defendant's] argument depended on the proposition that all class members must prove their standing before a class could be certified, that argument would be wrong." *Id.* at 1273. Instead, it was necessary for the court to ask, prior to certification, how many class members had an injury, and whether there was "a plausible straightforward method to sort [those with standing] out at the back end of the case." *Id.* 1275.

The instant matter is not before the Court on a Rule 23 motion to certify. Instead, Intoxalock brings a Rule 12(f) Motion to Strike at an early stage of proceedings, before discovery has taken place. Nothing in the Amended Complaint indicates that a large portion of the class members' telephone numbers are non-residential or placed on the DNC registry by someone else, or that the bulk of the unnamed members have an existing business relationship with Intoxalock. Additionally, the Court is ill-equipped to undertake the inquiries identified in *Cordoba* at this stage in the litigation. If a district court can certify a class and "sort out the uninjured class members" at a "later stage in the proceeding," *Cordoba*, 942 F.3d at 1276, then it can certainly deny a motion to strike a class allegation based only on the face of the complaint, *see Sharfman*, 2021 WL 6884683, at *6 ("Defendant points to no authority that would support the striking of class allegations from the complaint, prior to the class certification stage, based on the mere possibility that the unnamed class members may not have standing."). Intoxalock's Motion to Strike the DNC Registry class is premature.

It can hardly be said that Mr. Lopez's class allegations are "impertinent" or "scandalous." F. R. Civ. P. 12(f). After the benefit of full discovery, and on a motion to certify the classes, Intoxalock is free to reraise these arguments.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant's Motion to Dismiss Count I (Dkt. 26) and Motion to Strike FTSA No Consent Class and Do Not Call Registry Class (Dkt. 28) are **DENIED**. **DONE** and **ORDERED** at Tampa, Florida, on May 10, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies Provided To**
Counsel of Record